IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| ALLAN STEVO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 08-3162 |
| | ) | |
| JOHN R. KEITH, WILLIAM M. | ) | |
| McGUFFAGE, ROBERT J. | ) | |
| WALTERS, PATRICK A. BRADY, | ) | |
| WANDA L. REDNOUR, JESSIE R. | ) | |
| SMART, ALBERT PORTER, and | ) | |
| BRYAN SCHNEIDER, in their | ) | |
| official capacities as Board Members | ) | |
| for the Illinois State Board of | ) | |
| Elections, | ) | |
| | ) | |
| Defendants. | ) | |

OPINION

RICHARD MILLS, U.S. District Judge:

Plaintiff Allan Stevo is an independent candidate for Congress who seeks to be placed on the ballot for the Tenth Congressional District in Illinois.  He filed suit after the Illinois State Board of Elections rejected his application as not containing enough signatures.  Several motions are pending before the Court.

I. BACKGROUND

This is an action under 42 U.S.C. § 1983, wherein Plaintiff Allan Stevo alleges his rights under the First and Fourteenth Amendments have been violated. The complaint alleges that Stevo is an Illinois resident who lives outside of Chicago and satisfies the constitutional requirements for election to the United States House of Representatives. The Defendants are Board Members sitting on Illinois's State Board of Elections and are sued in their official capacities.

Stevo alleges that the application of certain provisions of the Illinois Election Code, see 10 ILCS 5/1-1, et seq., violates his rights under the First and Fourteenth Amendments. Under Illinois law, in most election years, an independent candidate for congressional office must collect signatures equal in number to 5% of the total number of persons who cast votes in the last general election in the district. See 10 ILCS 5/10-3.

Stevo claims that on June 23, 2008, he submitted over 7200 valid voters' signatures in attempting to qualify for the Tenth Congressional District ballot. Several days later, Stevo's candidacy was challenged by

Patrick LeBeau of DesPlaines, Illinois. Stevo alleges that on July 21, 2008, the Defendants concluded that he had not complied with the Illinois requirement that independent candidates for Congressional seats in election years that do not immediately follow the federal census submit signatures equal in number to 5% of the total number of persons who voted in the last general election within the district. See 10 ILCS 5/10-3. The Defendants determined that in order to qualify for the ballot, a candidate was required to file a petition which contained no fewer than 10,285 signatures. They found his petition contained only 6,978 valid signatures.

Stevo notes that the Illinois statute states in part, "For the first election following a redistricting of congressional districts, nomination papers for an independent candidate for congressman shall be signed by at least 5,000 qualified voters of the congressional district." See 10 ILCS 5/10-3. Under that law, therefore, independent candidates who ran for Congress in 1972, 1982, 1992 or 2002, and independent candidates who run in 2012 (assuming the same law is then in place) are only required to gather signatures from 5,000 qualified voters in the congressional district in which

3

they are running. Stevo contends that the 5% rule which in this case would require more than twice as many signatures than the 5,000 required immediately following a federal census is unnecessary, discriminatory and unconstitutional.

Stevo claims that the requirement of 10,285 signatures for the 2008 congressional ballot places a severe burden on the First Amendment rights of independent candidates. He contends, moreover, the requirement that only 5,000 signatures are necessary in election years immediately following the federal census proves that the more burdensome requirement is unnecessary, discriminatory and unconstitutional.

## II. ANALYSIS

In arguing that the Plaintiffs' complaint should be dismissed, the Defendants rely in part on the decision in <u>Libertarian Party of Illinois v. Rednour</u>, 108 F.3d 768 (7th Cir. 1997), wherein the Seventh Circuit held that the state law requirement that a new political party meet the 5% petitioning requirement is constitutional.[1]  <u>See</u> <u>id.</u> at 776-77. "The

---

[1]The Defendants also contend that the requested equitable relief is barred by the doctrine of laches, in that Stevo attempted to comply with the statutory

4

Supreme Court has long permitted states to impose various restrictions limiting a candidate's access to the ballot." Id. at 774. Thus, "states have a vital and compelling interest in requiring political parties appearing on the general ballot [to] demonstrate a significant, measurable quantum of community support." Id. (internal quotation marks and citation omitted). The purpose of allowing such restrictions is to further the state's legitimate interest of "avoiding confusion, deception, and even frustration of the democratic process at the general election." Id. (quoting Jenness v. Fortson, 403 U.S. 431, 442 (1971)).

(A)

Stevo claims that Rednour is not relevant, in that Illinois cannot demand 10,000+ signatures from independent congressional candidates in the Tenth District in 2008, yet only demand 5,000 signatures, under the same law and from the exact same candidates–in 2002 and 2012. According to Stevo, Illinois can demand 10,000+ signatures from all prospective candidates or 5,000 from all. Stevo claims, however, that the State simply

---

provisions that he now asserts are unconstitutional.

cannot apply different standards to candidates running in 2008 than it has previously applied or will apply in the future.

Stevo's Equal Protection argument is based on the fact that his signature submission would have sufficed to qualify him for the congressional ballot in Illinois in years ending in "2," pursuant to the State's decennial redistricting exception. In contending that he is likely to succeed on the merits, Stevo notes that the 5% signature requirement for independent congressional candidates is one of the most severe in the country. While this may be true, the United States Supreme Court and the Seventh Circuit have concluded that similar or more restrictive requirements are constitutionally sound. See Jenness v. Fortson, 403 U.S. 431, 438 (1971) (determining a requirement that an independent candidate for elective public office submit signatures from 5% of registered voters does not violate the Constitution); see also Rednour, 108 F.3d at 776-77. Thus, Stevo concedes this requirement alone is not by itself unconstitutional.

When the 5% requirement is compared with the 5,000 signatures required immediately following a federal census, Stevo claims that the

Illinois law cannot withstand heightened scrutiny. He contends the requirement is not necessary to achieve any compelling, or even legitimate, state interest.

Stevo notes that in <u>Illinois State Bd. of Elections v. Socialist Workers Party</u>, 440 U.S. 173 (1979), the Supreme Court addressed a requirement that required independents and new parties to submit 35,947 valid signatures in order to obtain ballot access in a special mayoral election in Chicago. <u>See</u> <u>id.</u> at 177-78. According to the Illinois Election Code, the signatures of 25,000 qualified voters were necessary in order to appear on the ballots in statewide elections. <u>See</u> <u>id.</u> at 175. In elections for offices of political subdivisions of the State, however, a candidate had to submit at least 5% of the number of persons who voted in the previous election. <u>See</u> <u>id.</u> at 175-76. The Court observed that in Chicago, "application of this standard has produced the incongruous result that a new party or independent candidate needs substantially more signatures to gain access to the ballot than a similarly situated party or candidate for statewide office." <u>Id.</u> at 176-77.

The Court concluded that "[t]he signature requirements for independent candidates and new political parties seeking offices in Chicago are plainly not the least restrictive means of protecting the State's objectives." Id. at 186. The State advanced no reason why a more stringent requirement was needed for Chicago. See id. Although the anomaly at issue may be explained by the fact that the requirements were tied solely to a population standard, the Court concluded that this "cannot constitute a compelling state interest," and any requirement that new parties and independent candidates submit more than 25,000 signatures is therefore unconstitutional. See id. at 187.

Stevo further notes that in Norman v. Reed, 502 U.S. 279 (1992), the Supreme Court observed that "Illinois law retains the constitutional flaw at issue in Socialist Workers Party by effectively increasing the signature requirement applicable to elections for at least some offices in subdivisions with separate districts." Id. at 293. The Supreme Court noted that under the State Supreme Court's interpretation of the applicable statute, the petitioners were required to submit 50,000 signatures (25,000 from the city

8

district and another 25,000 from the suburbs) to run any candidates. See id. The Court concluded that the rule in Socialist Workers Party prevents the State from requiring the petitioners to accumulate twice as many signatures to field candidates in Cook County as they would need statewide. See id.

Stevo further notes that in Gjersten v. Board of Election Commissioners for City of Chicago, 791 F.2d 472 (7th Cir. 1986), the Seventh Circuit determined that, because the two offices were the same, the district court properly invalidated a law which required that candidates for ward committeeman collect signatures equal to 10% of the primary electors, when candidates for township committeeman had to submit only 5%. See id. at 476-77.

Stevo also points to a district court's decision in Citizens Party of Illinois v. Illinois State Bd. of Elections, 546 F. Supp. 1050 (N.D. Ill. 1982), which analyzed the requirement that candidates for the state senate and state house needed 3,000 signatures in elections following a redistricting. See id. at 1052. The court noted that because of the size of the districts,

the party interested in running for the senate drew from an available pool of voters that was approximately twice as large. See id. at 1053. After observing that the defendants failed to provide a reason for this disparity, the court concluded that plaintiffs had established a likelihood of success on the merits. See id. at 1058.

Stevo attempts to draw an analogy between this case and Citizens Party. He alleges the requirement in that case was unconstitutional because it required twice as much of a house candidate as it did of a senate candidate. Stevo contends that the percentage requirement in this case should similarly be invalid because it requires that he collect twice as many signatures as a similarly situated candidate running in 2002 or 2012. He asserts this comparison proves that 10,000+ signatures cannot be the least restrictive alternative when 5,000 worked in 2002 and will work in 2012 to achieve the State's interests.[2] Like the court in Citizens Party, Stevo claims this Court should correct the disparity by requiring him to submit a number

---

[2] According to Stevo, Illinois is the only state that requires a flat number of signatures (for either an independent or minor party candidate for Congress) in some election years, and a number calculated as a percentage of voters in other elections years.

of signatures that is equal to what is necessary–5,000 signatures at most.

(B)

After considering the relevant Supreme Court and Seventh Circuit cases, the Court concludes that Stevo has failed to demonstrate a likelihood of success on the merits and is not entitled to injunctive relief. Stevo has not alleged an Equal Protection violation. Independent candidates for Congress are treated equally under 10 ILCS 5/10-3.

An example of an Equal Protection violation would be an Illinois law that required independent candidates to submit the signatures of 5% of a district's voters, while requiring less (or more) of that number for other independent candidates in order to appear on the ballot for the same office. Under the current Illinois law, independent candidates are treated equally each election cycle. Every ten years, Stevo or any other independent candidate who otherwise meets the qualifications for Congress can obtain ballot access by submitting the signatures of at least 5,000 qualified voters of a congressional district. In other congressional election years,

independent candidates such as Stevo can have their names placed on the ballot by submitting the signatures of more than 5% of that district's voters.

Each of the Supreme Court and Seventh Circuit cases relied on by Stevo are distinguishable from this case. Significantly, none of those cases (<u>Socialist Workers Party</u>, <u>Norman</u>, or <u>Gjersten</u>) deal with differing standards for obtaining ballot access in different election cycles. In each of those cases, the Court is addressing different standards for being placed on the ballot for a particular office in a given year.[3] This is crucial as to why Equal Protection violations were found–independent candidates running for the same office or very similar offices were held to different standards for obtaining ballot access.

Stevo has pointed to no case which holds that it is an Equal Protection violation to have differing standards for being placed on the ballot in different election years. The law at issue in this case may "make no sense," as Stevo argues. It may be unwise. However, that does not mean it is unconstitutional.

---

[3] The same is true of the district court in <u>Citizens Party</u>.

12

III. CONCLUSION

The Court concludes that, because Stevo has failed to establish a likelihood of success on the merits, he is entitled to no injunctive relief. Moreover, because the United States Supreme Court and the United States Court of Appeals for the Seventh Circuit have recognized that 5% signatory requirements are constitutional, the Court concludes that Stevo has failed to state a claim upon which relief can be granted.

Ergo, the Plaintiff's motion for a preliminary injunction [d/e 2] and his motion for a temporary restraining order [d/e 6] are DENIED. The Defendants' motion to dismiss [d/e 8] is GRANTED. All other motions are DENIED AS MOOT.

ENTER: August 27, 2008

    FOR THE COURT:

        s/Richard Mills
        United States District Judge